## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| HOUSE OF BRANDS KJ PTY LTD., | |
| Plaintiff, | |
| v. | Case No.: 1:18-cv-00494-WES-LDA |
| ALEX AND ANI, LLC, ALEX AND ANI SOUTH SEAS, LLC; and OMAR AJAJ, individually, | **JURY TRIAL DEMANDED** |
| Defendants. | |

### PLAINTIFF HOUSE OF BRANDS KJ PTY LTD.'S PRETRIAL MEMORANDUM

In accordance with this Court's January 8, 2019 Standard Pretrial Order and December 27, 2019 Text Order resetting the Standard Pretrial Order deadlines, Plaintiff House of Brands KJ Pty Ltd. ("House of Brands") respectfully submits its Pretrial Memorandum.

### I.      HOUSE OF BRANDS' EXPECTATION OF THE EVIDENCE

**A.      Summary**

House of Brands invested millions of dollars in marketing and distributing Alex and Ani's[1] products in Australia, New Zealand, and Fiji (the "Territory").  After incurring substantial losses, House of Brands notified Alex and Ani that it intended to terminate the agreement between the parties.  Relying upon Alex and Ani's representations that it would pay for all of House of Brands' remaining inventory, and based upon the terms of the parties' agreement requiring Alex and Ani to do so, House of Brands shipped back roughly $2 million worth of inventory.  To date, Alex and

---

[1] Two of the defendants in this case are Alex and Ani entities: Alex and Ani, LLC and Alex and Ani South Seas, LLC. On June 25, 2019, the parties filed a Stipulation (ECF No. 24) in which Defendants agreed that Alex and Ani, LLC used Alex and Ani South Seas, LLC as a mere instrumentality, and that the two entities did not maintain corporate formalities. As a result, Defendants agreed that any actions or representations made by Alex and Ani South Seas, LLC or its agents should be treated as actions or representations made by Alex and Ani, LLC or its agents, and vice versa.

Ani has not paid House of Brands a dime for the returned inventory, even though Alex and Ani resold the inventory to other retailers, engorging itself with a double profit.

**B.      Parties negotiate the Agreement**

House of Brands is an Australian-based trading house that purchases brands around the world for distribution to customers in the Territory.  Alex and Ani is an American retailer and producer of jewelry that distributes its products both domestically and internationally.

In 2013, Alex and Ani contacted House of Brands to engage the company as Alex and Ani's distributor in the Territory.  In January 2015, after informally discussing the engagement for over a year, the parties began to negotiate an initial term sheet (the "Term Sheet") that set out key terms of the engagement.  After almost a year of negotiations, the parties ultimately agreed on a final Term Sheet whereby House of Brands could purchase Alex and Ani's jewelry products for resale, distribution, and promotion in the Territory.  The Term Sheet provided that if House of Brands voluntarily terminated the agreement, Alex and Ani would be required to purchase back all of House of Brands' inventory at the price House of Brands paid for the products.

**C.      Parties enter into the Agreement**

The parties incorporated the provisions of the Term Sheet into a Supply and License Agreement (the "Agreement"), which the parties entered into in November 2015.  The Agreement provided that House of Brands could purchase Alex and Ani's products for resale and distribution in the Territory, at prices that were specified in Schedule F attached to the Agreement.

The Agreement also provided that House of Brands could voluntarily terminate the Agreement with nine months' notice if House of Brands determined that Alex and Ani's business was not viable in the Territory.  The Agreement provided in two places that if it was terminated for any reason, Alex and Ani was required to purchase back all of House of Brands' remaining inventory.  In one section, the Agreement accurately incorporated the provision in the Term Sheet

stating that Alex and Ani would be required to purchase back the inventory at the price at which House of Brands paid for the products.  In the other section, there was an unnoticed mistake in which the parties' names were switched,[2]  indicating that the price to be paid for the returned inventory was the price at which Alex and Ani paid for the products rather than House of Brands' price.  It is undisputed, however—based upon testimony from Alex and Ani's corporate representative, Alex and Ani's former Senior VP of Sales involved in negotiating the Term Sheet and the Agreement, and House of Brands' corporate representative—that the parties understood that the Agreement required Alex and Ani to repurchase any remaining inventory at the price at which *House of Brands* paid for the products.  Indeed, the parties never contemplated or discussed any other arrangement.  It would also have been wholly inconsistent with industry norms for the price to be Alex and Ani's cost.  House of Brands' expert in the jewelry business opined that it is not customary for jewelry manufacturers to ever reveal their internal prices, and it is absurd to think that Alex and Ani would have done that here.

**D.      House of Brands terminates the Agreement**

After a year and a half of distributing and promoting Alex and Ani's products in the Territory—and after losing millions of dollars doing so—House of Brands determined that the business was not viable in the Territory.

On April 13, 2017, pursuant to the Agreement, House of Brands sent Alex and Ani a written Notice of Termination, thereby providing Alex and Ani nine-months' notice of House of Brands' intent to terminate the Agreement.  Alex and Ani responded by confirming that the Notice of Termination was valid and that, per the Agreement, Alex and Ani would purchase back all of House of Brands' remaining inventory by March 17, 2018.   Alex and Ani's legal department

---

[2] The Agreement refers to Alex and Ani as "Licensor" and House of Brands as "Licensee."

drafted this correspondence and directed its VP of International Business Development, Omar Ajaj—House of Brands' main point of contact at Alex and Ani—to send the correspondence to House of Brands on Alex and Ani's behalf.

Over the next nine months, House of Brands worked diligently to wind down the business in a manner that would not tarnish Alex and Ani's reputation in the Territory.  House of Brands coordinated with Alex and Ani on drafting correspondence to retailers alerting them that House of Brands would no longer be distributing Alex and Ani's products.  House of Brands also continued to promote, market, and distribute Alex and Ani's jewelry—at a significant loss—in reliance upon Alex and Ani's representations that it would fulfill its obligations under the Agreement.

As the Agreement's termination date approached, House of Brands—at Alex and Ani's request—sent detailed lists of its remaining inventory that Alex and Ani's marketing department used to develop plans to resell the products.   House of Brands also worked closely with Alex and Ani to coordinate the shipment and return of the products.  On January 12, 2018, Ajaj sent House of Brands an email on Alex and Ani's behalf confirming that Alex and Ani would pay House of Brands for the returned products and associated shipping costs upon receipt.

**E.     House of Brands returns all inventory**

Relying upon Alex and Ani's written representations that it would purchase back all of the goods upon delivery, and consistent with the terms of the Agreement, House of Brands meticulously packed and shipped all of its remaining inventory back to Alex and Ani.   House of Brands sent invoices to Alex and Ani for the returned inventory in the amount of $2,012,512.92, which included the insurance and shipping costs that Alex and Ani promised to pay.

On March 26, 2018, Ajaj confirmed in writing that Alex and Ani received the shipment on March 21, 2018.  While Alex and Ani's policies dictate that it will provide an itemized receipt for unusually large returns such as this, Alex and Ani never prepared or sent House of Brands such a

receipt.  In fact, the only document that Alex and Ani has ever given House of Brands that remotely reflects its efforts to itemize House of Brands' return is a spreadsheet that was produced during litigation, yet Alex and Ani does not know who created this document, when it was created, how it was created, or whether it was complete.

**F.      Alex and Ani fails to pay for the returned inventory**

There is no dispute that Alex and Ani suddenly stopped communicating with House of Brands after it received the inventory, nor that Alex and Ani refused (or ignored) House of Brands' multiple requests for payment.  As a result, House of Brands sent follow-up emails all the way up the chain of command at Alex and Ani, including to Ajaj; Alex and Ani's Senior VP of Retail, Wholesale, and International, Vince Montemarano (Ajaj's supervisor); and Alex and Ani's CEO, Carolyn Rafaelian.  House of Brands later learned that Ajaj left the company a few months after it refused to pay House of Brands for inventory, and he signed a Separation Agreement and General Release in which he agreed not to bring any legal action against Alex and Ani.

To this day, Alex and Ani has not paid House of Brands one cent for the returned inventory, notwithstanding that it accepted the products returned by House of Brands and subsequently resold them to other retailers—thereby stiffing House of Brands, and at the same time engorging itself with double profits by selling the same items twice.

In light of the foregoing, House of Brands filed this lawsuit on September 6, 2018, alleging the following causes of action:

1.  Breach of contract against Alex and Ani;

2.  Breach of the implied covenant of good faith and fair dealing against Alex and Ani;

3.  Book account against Alex and Ani;

4.  Unjust enrichment against Alex and Ani;

5.  Negligent misrepresentation against Alex and Ani and Ajaj; and

6.  Fraudulent misrepresentation against Alex and Ani and Ajaj.

## II.    STATEMENT OF ISSUES AND APPLICABLE LAW

**A.    Breach of contract**

To succeed on a breach of contract claim under Rhode Island law, a plaintiff must show that (1) an agreement existed between the parties, (2) the defendant breached the agreement, and (3) that the breach caused damages to the plaintiff.  *Petrarca v. Fid. & Cas. Ins. Co*., 884 A.2d 406, 410 (R.I. 2005).

House of Brands intends to prove that it is undisputed that it has satisfied all of the elements of a breach-of-contract claim.  The parties agree that (1) the Agreement was valid, (2) Alex and Ani breached the Agreement by failing to pay for the inventory House of Brands returned, and (3) Alex and Ani's breach caused damage to House of Brands.  The only disputed issue is ***how much*** damage Alex and Ani's breach caused to House of Brands, a subject that is further analyzed in the Damages section below.

**B.    Implied covenant of good faith and fair dealing**

It is well settled under Rhode Island law that there is an implied covenant of good faith and fair dealing between parties in every contract so that the contractual objectives may be achieved. *Ross-Simons of Warwick, Inc. v. Baccarat, Inc*., 66 F. Supp. 2d 317, 329 (D.R.I. 1999) (citing *Fleet Nat'l Bank v. Liuzzo*, 766 F. Supp. 61, 67 (D.R.I. 1991)).  When determining if a party breached its implied covenant of good faith, "[t]he core issue is whether the party's behavior was unreasonable or arbitrary, viewed against the backdrop of the contractual objectives." *A.J. Amer Agency, Inc. v. Astonish Results, LLC*, CA 12-351 S, 2014 WL 3496964, at *33 (D.R.I. July 11, 2014) (citing *Hord Corp. v. Polymer Research Corp. of Am.*, 275 F.Supp.2d 229, 238 (D.R.I. 2003)).

House of Brands intends to prove that Alex and Ani's actions were unreasonable and arbitrary viewed in light of the contractual objectives of the Agreement.  Alex and Ani's unreasonable and arbitrary conduct includes the following:

- Having its legal department draft correspondence to House of Brands representing that the Notice of Termination was valid and that it would purchase back all remaining inventory;

- Directing Ajaj to send the correspondence containing the representation that it would purchase back all remaining inventory to House of Brands, but then claiming in litigation that Alex and Ani did not authorize Ajaj to make such representations;

- Coordinating with House of Brands for months leading up to the shipment about the quantity and type of remaining inventory, and internally strategizing about how and where to resell the inventory upon its return;

- Coordinating the shipment of the remaining inventory with House of Brands, including the manner and method of shipping;

- Receiving the inventory, but—contrary to its own internal policies—failing to provide House of Brands with an itemized receipt or otherwise notify House of Brands of any discrepancy in the quantity actually received;

- Failing to pay House of Brands for the returned inventory, despite its obligations under the Agreement and affirmative representations that it would do so;

- Failing to respond and/or ignoring House of Brands repeated requests for payment for the returned inventory;

- Selling the returned inventory to third parties for a double profit; and

- Claiming the price to be paid for the inventory is a price that it never disclosed to House of Brands, and that, to this day, its own staff cannot explain how to calculate.

House of Brands also intends to introduce evidence from Ajaj and Daniel Sills, Alex and Ani's former Senior Vice President of Sales, who both testified that Alex and Ani did not treat House of Brands fairly.  In fact, Ajaj, now a business owner himself, further testified that he would never treat his business partners and/or customers the way that Alex and Ani has treated House of Brands.  House of Brand also intends to introduce evidence from its expert in the jewelry business that Alex and Ani's actions were not consistent with industry standards.

C.      **Book account**

To satisfy the elements of a claim for book account, which is also known as goods sold and delivered, the plaintiff must establish the purchase, sale, and delivery of goods at an established price and defendant's subsequent nonpayment of the invoices for such goods. *See D. Costa Elec. Co., L.L.C. v. SMD Realty Constr., Inc.*, No. KC 10-468, 2011 R.I. Super. LEXIS 148, at *16 (Super. Ct. 2011) (holding that plaintiff sustained its burden on its claim for book account by demonstrating that it performed services for the benefit of defendant and defendant did not pay the amounts set forth in the invoices therefor); *see also Oaklawn Nurseries v. Ratush*, 88 R.I. 325, 328-30, 148 A.2d 128, 129-30 (1959). "Evidence of the amount due on account based on records of account kept in the regular course of business is competent to prove entitlement to the price." *Wai Feng Trading Co. Ltd v. Quick Fitting, Inc.*, CV 13-033WES, 2018 WL 6599875, at *7 (D.R.I. Dec. 17, 2018) (citing *Douglas Furniture Corp. v. Ehrlich*, 160 A.2d 362, 364 (R.I. 1960)).

House of Brands intends to prove that Alex and Ani owes House of Brands an unpaid book account in the amount of $2,012,512.92.

D.      **Unjust Enrichment**

To prevail on a claim for unjust enrichment, a claimant must prove:

> (1) that he or she conferred a benefit upon the party from whom relief is sought; (2) that the recipient appreciated the benefit; and (3) that the recipient accepted the benefit under such circumstances "'that it would be inequitable for [the recipient] to retain the benefit without paying the value thereof.'"

*Dellagrotta v. Dellagrotta*, 873 A.2d 101, 113 (R.I. 2005) (quoting *Bouchard v. Price*, 694 A.2d 670, 673 (R.I. 1997)); *see also Rhode Island Bhd. of Corr. Officers v. Rhode Island*, 264 F.Supp.2d 87, 104–05 (D.R.I. 2003). While unjust enrichment is an equitable claim ultimately to be decided by the Court, House of Brands requests that its claim be submitted to the jury for an advisory verdict.

House of Brands intends to prove that it conferred a benefit upon Alex and Ani by returning $2,012,512.92 worth of inventory, which includes the cost of insurance and shipping. Alex and Ani appreciated the benefit *twice* by accepting the products from House of Brands and reselling the inventory shortly thereafter to third parties for a double profit. Indeed, prior to the shipment of inventory, Alex and Ani coordinated with House of Brands about the quantity and type of inventory that would be returned. At the same time Alex and Ani represented to House of Brands that it would pay for the returned inventory, it was simultaneously strategizing how to resell the inventory to maximize its profits. Under these circumstances, it would be inequitable for Alex and Ani to keep the returned inventory, resell the inventory at a double profit, and yet fail to pay House of Brands the amount that House of Brands initially paid for the inventory pursuant to the Agreement and the mutual understanding of the parties.

**E.      Fraudulent misrepresentation**

It is well settled that "'[t]o establish a prima facie damages claim in a fraud case, the plaintiff must prove that the defendant made a false representation intending thereby to induce plaintiff to rely thereon'" and that the plaintiff justifiably relied thereon to his or her damage. *Kooloian v. Suburban Land Co.*, 873 A.2d 95, 99 (R.I. 2005) (quoting *Travers v. Spidell*, 682 A.2d 471, 472–73 (R.I. 1996)).

House of Brands intends to prove that Defendants made false representations that House of Brands' Notice of Termination was valid and that Alex and Ani intended to pay for all of House of Brands' remaining inventory. Defendants knew this representation was false when it was made. Specifically, while Alex and Ani's legal department directed Ajaj to send the correspondence, Alex and Ani claims it never intended to give Ajaj authority to make such representations on behalf of the company. Nonetheless, Alex and Ani—through Ajaj—made the representations to induce House of Brands to return all of its remaining inventory, despite the fact that it had no intention of

paying for the inventory. Alex and Ani then strategized about reselling the inventory for several months leading up to House of Brands' shipment.

Relying upon Alex and Ani's representations, House of Brands shipped all of its inventory to Alex and Ani. Upon receipt of the shipment, Alex and Ani quickly resold the inventory to other retailers for a double profit. Alex and Ani simultaneously went dark on House of Brands, refusing to respond to its multiple requests for payment for the returned inventory. Ajaj testified that, despite being House of Brands' main point of contact during its entire relationship with Alex and Ani, he individually did not respond to House of Brands' requests for payment because "it was no longer in his scope of work." He claims to have nonetheless requested that others at Alex and Ani respond to House of Brands, but to no avail. A few months later, Ajaj left his employment with Alex and Ani and signed a Separation Agreement in which he agreed not to bring any claims against Alex and Ani in exchange for Alex and Ani's continued funding of his legal representation in this litigation.

Finally, House of Brands intends to prove that its reliance on Defendants' fraudulent misrepresentations caused it to incur significant damages, which are specifically set out in the Damages section below.

## F.    Negligent misrepresentation

To prevail on a negligent misrepresentation claim, the claimant must prove that (1) the defendant made a false representation or provided false information concerning existing facts or circumstances; (2) the representation or information was false at the time it was made; (3) the defendant knew or should have known that the information was to be relied upon by the plaintiff in a business transaction; (4) the defendant failed to exercise reasonable care in obtaining or communicating the information in question; (5) the plaintiff relied on the false representation or information; (6) the plaintiff's reliance on the false representation or information was reasonable

under the circumstances; and (7) the plaintiff suffered some financial loss or harm as a proximate result of the representation or information.  *Gupta v. Customerlinx Corp.*, 385 F. Supp. 2d 157, 162 (D.R.I. 2005).

To the extent House of Brands does not prove that Defendants' false representations to House of Brands were fraudulent, House of Brands intends to prove that they were, at minimum, negligent.  Specifically, House of Brands intends to show that Defendants failed to exercise reasonable care in obtaining or communicating the information in the representations upon which House of Brands relied to its detriment.  Additionally, even if Defendants' representations were true at the time they were made (they were not), Defendants' subsequent nondisclosure of Alex and Ani's decision not to pay House of Brands for the returned inventory rendered the representations false and amounted to an actionable misrepresentation.  *See id.* at 163 (holding that even if defendant's representations were true at the time they were made, defendant's nondisclosure of subsequent board action which rendered his statements false amounted to a misrepresentation).

## G.    Damages

House of Brands seeks the following damages: inventory and shipment costs, reliance damages, loan expenses, attorneys' fees and costs, pre- and post-judgment interest, punitive damages, and any other relief to which it may justly be entitled.  Each of these categories of damages is addressed below.

### 1.    Inventory and Shipment Costs

House of Brands intends to prove that it is owed $2,012,512.92 for the returned inventory and associated shipping and insurance costs.  The parties agree that upon termination of the Agreement, Alex and Ani was required to purchase back all of House of Brands' remaining inventory at the price House of Brands paid for it.  According to Alex and Ani's corporate

representative, the **sole reason** that Alex and Ani has not paid anything for the returned inventory is that there is a discrepancy in the quantity of goods allegedly received.  Although the discrepancy in the quantity of goods is quite small (roughly $100,000), Alex and Ani never told House of Brands about the alleged discrepancy until several months into this ligation.  Moreover, Alex and Ani never offered to pay House of Brands for the undisputed quantities of goods returned.  As further explained below, House of Brands intends to prove that Alex and Ani accepted the inventory and waived any arguments about non-conformity of the returned goods.[3]

### a.    Discrepancy related to the quantity of goods received

The first time that Alex and Ani alleged (or otherwise notified House of Brands) that the amount of inventory Alex and Ani allegedly received did not match the amount of inventory purportedly returned by House of Brands was six months into litigation, and one year after Alex

---

[3] Over a year into litigation, Defense counsel for the first time argued that the Agreement required Alex and Ani to purchase back the remaining inventory at the price **Alex and Ani** paid for the goods—not the price House of Brands paid.  In support, Defense counsel pointed to the section of the Agreement that incorrectly incorporated the terms of the Term Sheet into the Agreement.  However, Defense counsel's argument directly contradicts the unequivocal testimony of Omar Ajaj and Alex and Ani's own witnesses, including its corporate representative, that Alex and Ani understood this very section—and the Agreement as whole—required it to purchase back the goods at the price **House of Brands** paid.  This understanding of Alex and Ani's obligations under the Agreement is further reflected in the Term Sheet drafts, the final Term Sheet, the parties' negotiations, other witness testimony, and expert testimony.

Notwithstanding, to the extent the Court entertains Defense counsel's new argument that there is a contested issue about price and determines that the Agreement is ambiguous, House of Brands intends to prove that the parties' true intent was for the Agreement to require Alex and Ani to purchase back the inventory at the price House of Brands paid for the goods.  When a contract is determined to be ambiguous, the Court may resort to extrinsic evidence to determine the true intent of the contracting parties.  *UNUM Life Ins. Co. of Am. v. Cappello*, 278 F. Supp. 2d 228, 233 (D.R.I. 2003).  The extrinsic evidence, "together with the reasonable inferences extractable therefrom, are together superimposed on the ambiguous words to reveal the parties' discerned intent."  *Id.* at 233-34 (internal quotations omitted).

To the extent the Court finds that the Agreement is unambiguous and requires Alex and Ani to repurchase the inventory at the price Alex and Ani paid for the goods, House of Brands asks this Court to reform the Agreement to correct the parties' mutual mistake.  Reformation is an equitable remedy that allows the court to alter a written agreement "to reflect the actual intent of the parties," usually "to correct fraud or mutual mistake in the writing[.]"  *Mgmt. Capital, L.L.C. v. F.A.F., Inc.*, 209 A.3d 1162, 1172 (R.I. 2019) (quoting Black's Law Dictionary 1471 (10th ed. 2014)).  A mutual mistake is a mistake in the agreement that is common to both parties and fails in some material respect correctly to reflect their prior completed understanding. *Id.* Should it be necessary, House of Brands intends to show that it is undisputed that the parties' clear intention was for Alex and Ani to purchase back all of House of Brands remaining inventory at the price House of Brands paid for those goods.

and Ani received the shipment of inventory from House of Brands.  In the interim, Alex and Ani

failed to keep adequate records of the returned inventory and resold the inventory for a double

profit.  As a result, Alex and Ani now alleges that it cannot determine the amount of inventory it

received from House of Brands.  Alex and Ani has therefore waived any argument about non-

conformity of the goods under the Rhode Island Uniform Commercial Code ("RI UCC"), and

regardless, it has failed to produce any credible evidence showing that it did not receive the

inventory in the quantities invoiced by House of Brands.  *See* R.I. Gen. Laws §§ 6A-2.

### (1)      Alex and Ani waived arguments about non-conformity

House of Brands intends to show that Alex and Ani waived any argument about non-

conformity of House of Brands' shipment of inventory for three main reasons.  First, Alex and Ani

accepted the goods by signifying to House of Brands that the goods conformed.  *See id*. at §2-606.

Specifically, Alex and Ani never alerted House of Brands of any discrepancy in the returned

inventory, thereby precluding House of Brands from curing the alleged defect.

Second, Alex and Ani accepted the goods by failing to make an effective rejection.  Under

the RI UCC, acceptance of goods occurs when the buyer fails to reject the goods.  *Id*. at §2-606.

Rejection of goods must be within a reasonable time after their delivery or tender; it is ineffective

unless the buyer seasonably notifies the seller.  *Id*. at § 6A-2-602.  Whether something occurs

within a reasonable time "depends on the nature, purpose, and circumstances of the action."  R.I.

Gen. Laws § 6A-1-205.  An action is seasonable "if it is taken within the time agreed or, if no time

is agreed, at or within a reasonable time." *Id*.  Alex and Ani's former Senior VP of Sales, as well

as House of Brands' expert in the jewelry industry both testified that a reasonable amount of time

to inspect the returned inventory sent by House of Brands was fifteen to thirty days, and that a

reasonable time to notify House of Brands of any discrepancies would have been one to seven

days.  Because Alex and Ani failed to notify House of Brands of its rejection of the goods within a reasonable time, Alex and Ani has accepted the goods that House of Brands invoiced.

Third, Alex and Ani accepted the goods by acting inconsistently with House of Brands' ownership of the goods.  Specifically, reselling the returned goods to third parties was an act inconsistent with House of Brands' ownership because it demonstrates that Alex and Ani believed it rightfully owned the goods upon their return.

Given that Alex and Ani accepted the goods and waived any issue with non-conformity, it must pay House of Brands for those goods pursuant to the terms of the Agreement.  *See* R.I. Gen. Laws §§ 6A-2-305(4), 6A-2-607.

### (2)    Alex and Ani failed to produce credible evidence of a quantity discrepancy

Irrespective of whether Alex and Ani has waived an argument about non-conformity, House of Brands intends to show that Alex and Ani has not and cannot produce any credible evidence demonstrating a quantity discrepancy.  While House of Brands will present evidence that it meticulously inventoried all of its goods, documented the packaging process with pictures, and had two separate employees sign-off on the contents of each box of inventory it shipped; Alex and Ani cannot produce any credible evidence reflecting the method or results of processing the inventory.   The only document Alex and Ani produced that even purports to reflect results of processing the returned inventory is an unintelligible spreadsheet that its own corporate representative (designated to testify about the subject) could not explain.  Indeed, Alex and Ani does not know who created the spreadsheet, how it was created, when it was created, or if it is a complete record of all the inventory received.  What's more, Alex and Ani stated that within its systems, once goods are processed and resold, they cannot be tracked to an initial shipment—meaning that Alex and Ani will never be able to provide this Court with any credible evidence

rebutting the evidence House of Brands has put forth regarding the amount of inventory returned to Alex and Ani.

### 2. Reliance damages

House of Brands seeks damages for the costs it incurred in continuing to promote, market, and distribute Alex and Ani's products from April 2017 through January 2018 as a result of Defendants' bad faith, misrepresentation, and/or breach of the Agreement.  Courts within the First Circuit have routinely allowed for recovery of reliance damages in breach of contract actions.  *See*, *e.g.*, *Standard Machinery Co. v. Duncan Shaw Corp.*, 208 F.2d 61 (1st Cir. 1953) (allowing recovery of plaintiff's reasonable expenses of preparation for performance as well as lost profits); *see also* 11 Corbin on Contracts § 57.3 (2019) ("The present rule allowing the recovery of expenditures is not an alternative rule that may be applied only in the cases where profits are too uncertain for recovery. There are very many cases in which judgment has been given for both the profits and the amount of the expenditures.").

### 3. Loan expenses

House of Brands seeks to recover interest expenses that it incurred on an outstanding loan as a result of Alex and Ani's failure to pay for the returned inventory.  Had Alex and Ani paid for the returned inventory as promised, House of Brands would have been able to and fully intended to repay the outstanding loan with those monies.

When a contract is breached, the injured party is entitled to receive those damages "such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract...." *George v. George F. Berkander, Inc.*, 92 R.I. 426, 169 A.2d 370, 372 (1961); *accord Hendricks & Associates, Inc. v. Daewoo Corp.*, 923 F.2d 209, 214 (1st Cir. 1991) (holding that Massachusetts law "permits an award of consequential damages for prospective profits lost as the natural, primary and probable consequence of the breach,…unless 1) the loss was not such as

in the common course of events reasonably might have been expected, at the time the contract was made, to ensue from a breach,…or 2) the extent of the loss has not been evidenced with a fair degree of certainty (internal quotations and citations omitted)).  House of Brands' expenses on its loan would have been reasonably contemplated by both parties at the time the Agreement was consummated.  Accordingly, House of Brands is entitled to recover its loan expenses.

### 4.    Attorneys' fees and costs

House of Brands seeks recovery of attorneys' fees and costs pursuant to Sections 10.8 and 15.4 of the Agreement and R.I. Gen. Laws § 9-1-45.  *See Kells v. Town of Lincoln*, 874 A.2d 204, 214 (R.I. 2005) (granting plaintiff's request for attorneys' fees under R.I. Gen. Laws § 9-1-45 where defendants plainly breached the contract).

### 5.    Pre-judgment interest

House of Brands seeks pre-judgment simple interest at a rate of 12% per year beginning on March 17, 2018—the date Alex and Ani represented that its payment for the inventory was due pursuant to the Agreement.  In a diversity action, state law controls a prevailing party's entitlement to prejudgment interest." *John Hancock Life Ins. Co. v. Abbott Labs*., 863 F.3d 23, 49 (1st Cir. 2017) (citing *Comm'l Union Ins. Co. v. Walbrook Ins. Co*., 41 F.3d 764, 774 (1st Cir. 1994)); *see also Fratus v. Republic W. Ins. Co*., 147 F.3d 25, 30 (1st Cir. 1998) ("In diversity cases, state law must be applied in determining whether and how much pre-judgment interest should be awarded.").

Under R.I. Gen. Laws § 9-21-10, prejudgment interest shall be calculated at a rate of 12% percent per annum from the date the cause of action accrued. *See Fratus*, 147at 30 (holding that "[u]nder [] Rhode Island…law, the appropriate rate for pre-judgment interest in a contract action is 12 percent" and "the interest is automatically added by the clerk of courts from the date of demand until the judgment is entered").

6.      **Post-judgment interest**

Unlike pre-judgment interest, federal law governs a party's entitlement to post-judgment interest.  *See Abbott Labs*., 863 F.3d at 49; *see also* 28 U.S.C. § 1961 (providing for post-judgment interest on civil judgments in federal courts).  Indeed, "it is well established that federal law governs the entitlement to postjudgment interest in any federal civil suit, including a diversity suit such as the instant action." *Vazquez-Filippetti v. Cooperativa de Seguros Multiples de Puerto Rico*, 723 F.3d 24, 28 (1st Cir. 2013).

Pursuant to 28 U.S.C. § 1961(a), post-judgment interest shall be assessed from the date of the entry of the judgment, and shall be paid at a rate equal to the weekly average 1-year constant maturity Treasury yield for the calendar week preceding the date of judgment.  *Id.*  The interest "shall be computed daily to the date of payment" and "shall be compounded annually." *Id.* § 1961(b).

7.      **Punitive Damages**

House of Brands seeks recovery of punitive damages in an amount to be determined by the trier of fact.   Punitive damages are available in breach of contract cases where the breaches of contract "also constitute independent torts," such as "fraud, conversion, intentional interference with business relationships, and breach of fiduciary duty."  *Ross-Simons of Warwick, Inc. v. Baccarat, Inc*., 182 F.R.D. 386, 403 (D.R.I. 1998).

### III.   PROBABLE LENGTH OF TRIAL

House of Brands expects the trial of this matter to last seven to ten days.

### IV.   ADDITIONAL MATTERS

House of Brands will submit to the Court a witness list, an exhibit list, and proposed jury instructions and jury verdict form at least 14 days before jury selection in accordance with the Court's Standard Pretrial Order.  House of Brands intends to present one expert witness at trial.

House of Brands also intends to file various motions *in limine* prior to trial, including motions seeking to exclude testimony that is irrelevant and that would cause unfair prejudice to House of Brands, confuse the issues, mislead the jury, and cause undue delay in violation of Federal Rules of Evidence 401-403.

Dated:  April 27, 2020

Respectfully submitted,

*/s/ Robert G. Flanders, Jr.*
Robert G. Flanders, Jr. (#1785)
Timothy K. Baldwin (#7889)
Whelan, Corrente, Flanders, Kinder & Siket LLP
100 Westminster Street, Suite 710
Providence, RI 02903
Tel:  (401) 270-4500
Fax: (401) 270-3760
RFlanders@whelancorrente.com
TBaldwin@whelancorrente.com

Richard S. Krumholz
(admitted *pro hac vice*)
Joseph D. Piorkowski
(admitted *pro hac vice*)
Norton Rose Fulbright US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201
Tel: (214) 855-8000
Fax: (214) 855-8200
richard.krumholz@nortonrosefulbright.com
joseph.piorkowski@nortonrosefulbright.com

**Counsel for House of Brands Pty Ltd.**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 27, 2020, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Robert G. Flanders, Jr.*
Robert G. Flanders, Jr.